**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

CASE NO. 0:23-cv-62185-SMITH

ADIDAS AG, ADIDAS
INTERNATIONAL MARKETING B.V.,
and ADIDAS AMERICA, INC.,

      Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS
ENTITIES,  AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED ON
SCHEDULE "A,"

      Defendants.

_____/


**MEMORANDUM IN SUPPORT OF**
**MOTION BY DEFENDANTS TO SET ASIDE DEFAULT JUDGMENT**

Jacob Chen, Esq.
Anthony Son, Esq.
DGW KRAMER LLP
45 Rockefeller Plaza, 20th Floor
New York, NY 10111
Tel: (917) 983-2806
Fax: (917) 633-6183
Email: jchen@dgwllp.com

/s/Darren Heitner_____
HEITNER LEGAL, P.L.L.C.
215 Hendricks Isle
Fort Lauderdale, FL 33301
darren@heitnerlegal.com
Ph.	(954) 558-6999

*Attorneys for Defendants*
*localityi.com and mediumspots.com*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................................1

I.    THE JUDGMENT IS VOID AND MUST BE VACATED PURSUANT TO RULE 60(b)(4) AS DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA ..................................................................................2

    *A.*    *Florida Long-Arm Statute* ....................................................................*3*

    *B.*    *Due Process* ..........................................................................................*5*

II.    THE JUDGMENT IS VOID AND MUST BE VACATED PURSUANT TO RULE 60(b)(4) AS DEFENDANTS WERE NOT PROPERLY SERVED ...........................7

    *A.*    *The Hague Conventions Does Not Allow for Service by E-Mail Unless Explicitly Allowed by the Receiving Country* .......................................................*8*

    *B.*    *China's Objection to Service via "Postal Channels" Is an Objection to Service via E-Mail* ..........................................................................................*14*

III.    THE JUDGMENT SHOULD BE VOIDED PURSUANT TO RULE 60(B)(1) .......15

CONCLUSION ...................................................................................................................17

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ADT LLC v. Alarm Prot. Tech. Fla.*, LLC,

    2013 U.S. Dist. LEXIS 190106, *7 (S.D. Fla. 2013) ....................................................3, 4

*Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc.*,

    635 F.2d 434 (5th Cir. 1981) ...........................................................................................8

*Agha v. Jacobs*,

    No. C 07-1800 RS, 2008 U.S. Dist. LEXIS 109326, at *4

    (N.D. Cal. May 13, 2008) ................................................................................................14

*Alford v. Spillway Spas, LLC*,

    No. 6:20-cv-823-Orl-40GJK,

    2020 U.S. Dist. LEXIS 256057, at *5

    (M.D. Fla. Aug. 31, 2020) ...............................................................................................17

*Anova Applied Elecs., Inc. v. Hong King Grp.*, Ltd.,

    334 F.R.D. 465 (D. Mass. 2020) .....................................................................................12

*Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Republic*,

    788 F.3d 1329 (11th Cir. 2015) .......................................................................................15

*Becker v. Hooshmand*,

    841 So.2d 561 (Fla. 4th DCA 2003)................................................................................3

*Bell N. Rsch., LLC v HMD Am., Inc.*,

    2023 US Dist. LEXIS 39359 (SD Fla Mar. 8, 2023).......................................................6

*Brunswick Records Corp. v. Lastrada Entm't Co., Ltd.*,

    2022 U.S. Dist. LEXIS 214743, *8 (S.D. Fla. 2002) ....................................................3, 4

*Catalyst Pharms., Inc. v. Fullerton*,

    748 Fed. Appx. 944 (11th Cir. 2018) ..............................................................................3

*Cotromano v. United Tech. Corp.*,

    No. 13-80928-CIV-MARRA,

    2020 U.S. Dist. LEXIS 108317, at *6

    (S.D. Fla. Apr. 7, 2020) ...................................................................................................15

*CRS Recovery, Inc. v. Laxton*,

    2008 U.S. Dist. LEXIS 137363,

    2008 WL 11383537, at *2

    (N.D. Cal. Jan. 8, 2008) ................................................................................................13

*Elite Aluminum Corp. v. Trout*,

    451 F. Supp. 2d 1311 (S.D. Fla. 2006) ...........................................................................3

*Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.*,

    480 F. Supp. 3d 977 (N.D. Cal. 2020) ...........................................................10, 11, 12, 13

*Full Sail, Inc. v. Spevack*,

    2003 U.S. Dist. LEXIS 20631 (M.D. Fla. Oct. 21, 2003) ...............................................4

*Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*,

    Civil Action No. 19-608,

    2019 U.S. Dist. LEXIS 219724,

    at *8 (W.D. Pa. Dec. 23, 2019) .....................................................................................14

*Harris v. Browning-Ferris Industries Chemical Services, Inc.*,

    100 F.R.D. 775 (M.D. La. 1984) ...................................................................................10

*Idearc Inc. v. Kravitz Law Grp., P.A.*,

    No. 8:09-CV-02078-T-17AEP,

    2010 U.S. Dist. LEXIS 54469, at *6

    (M.D. Fla. May 7, 2010) ...............................................................................................17

*Jackson v. Grupo Indus. Hotelero, S.A.*,

    2008 U.S. Dist. LEXIS 88922, *13 (S.D. Fla. 2008) .............................................2, 3, 4, 5

*Kinney Sys. v. Cont'l Ins. Co.*,

    674 So. 2d 86, 88 (Fla. 1996) .........................................................................................5

*Kyjen Co., LLC v. Individuals*,

    2023 U.S. Dist. LEXIS 16408, *6 (S.D.N.Y. 2023)...................................................12, 13

*Last Goodbye, LLC v. Polychrome Pictures, LLC*,

    No. 1:07-cv-2879-TCB,

    2009 U.S. Dist. LEXIS 140026, at *11

    (N.D. Ga. Sep. 25, 2009)...............................................................................................17

*Lawson v. Sutton*,

No. 8:16-cv-403-T-17TBM,

2017 U.S. Dist. LEXIS 789, at *3

(M.D. Fla. Jan. 4, 2017).....................................................................................................17

*Licciardello v Lovelady*,

544 F3d 1280 (11th Cir 2008) .............................................................................................6

*Louis Vuitton Malletier, S.A. v Mosseri*,

736 F3d 1339 (11th Cir 2013) .............................................................................................6

*Luxottica Group S.p.A. v P'ships & Unincorporated Ass'n Identified on Schedule "A"*,

391 F Supp 3d 816 (ND Ill 2019).............................................................................8, 12, 14

*Mut. Serv. Ins. Co. v. Frit Indus.*,

358 F.3d 1312 (11th Cir. 2004) .............................................................................................2

*Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.*,

2019 U.S. Dist. LEXIS 178264, *4 (M.D. Fla. 2019)...........................................11, 12, 13

*Oldfield v. Pueblo De Bahia Lora*,

*S.A.*, 558 F.3d 1210 (11th Cir. 2009)....................................................................................2

*Olufemi v. Exclusive Ass'n Mgmt.*,

No. 23-10752, 2024 U.S. App. LEXIS 3985,

at *5 (11th Cir. Feb. 21, 2024) ...........................................................................................15

*Oppedisano v. Skroder*,

No. 22-61802-MC-ALTMAN/HUNT,

2022 U.S. Dist. LEXIS 238440, at *6

(S.D. Fla. Nov. 23, 2022) ...................................................................................................15

*Oviedo v. Ramirez*,

2022 U.S. Dist. LEXIS 93240, 2022 WL 1641865,

at *7 (S.D. Fla. May 24, 2022)..............................................................................................4

*Paris v. Levinson*,

2019 U.S. Dist. LEXIS 113436, *14 (M.D. Fla. 2019).......................................................4

*Perez v. Wells Fargo N.A.*,

774 F.3d 1329 (11th Cir. 2014) .........................................................................................15

*Posner v. Essex Ins. Co.*,

    178 F.3d 1209 (11th Cir. 1999) ........................................................................4

*Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*,

    494 F. Supp. 3d 404 (N.D. Tex. 2020) ...........................................................14

*Prosegur Sec. USA v. Glob. Elite Grp., Inc.*,

    2024 U.S. Dist. LEXIS 17400, *9 (S.D. Fla. 2024) .........................................5

*Response Reward Sys. v. Meijer, Inc.*,

    189 F. Supp. 2d 1332 (M.D. Fla. 2002).............................................................3

*Robinson v. Giarmarco & Bill, P.C.*,

    74 F.3d 253 (11th Cir. 1996) ............................................................................2

*Russell-Brown v. Jerry*,

    270 F.R.D. 654 (N.D. Fla. 2021) ......................................................................5

*Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.*,

    2023 U.S. Dist. LEXIS 102843, *11 (S.D.N.Y. 2023)....................................13

*Sales v. Guangdong Chigo Heating & Ventilation Equip. Co.*,

    494 F. Supp. 3d 404 (N.D. Tex. 2020) ...........................................................13

*Schluter Sys., L.P. v. Sanven Corp.*,

    2023 U.S. Dist. LEXIS 3069, *19 (N.D.N.Y. 2023).......................................13

*Smart Study Co. v. Acuteye-US*,

    620 F. Supp. 3d 1382 (S.D.N.Y. 2022) ...........................................10, 11, 12, 13

*Strauss, P.A. v. Gemini Ins. Co.*,

    No. 24-60191-CV-MIDDLEBROOKS,

    2024 U.S. Dist. LEXIS 122984, at *5 (S.D. Fla. July 12, 2024)......................15

*Valdez v. Feltman* (*In re Worldwide Web Sys.*),

    328 F.3d 1291 (11th Cir. 2003) ........................................................................7

*Volkswagenwerk AG. v Schlunk*,

    486 US 694 (1988) ....................................................................................11, 12

*Water Splash, Inc. v. Menon*,

    581 U.S. 271, 275, 137 S. Ct. 1504 (2017) ..............................................10, 12

*Winston v. Walsh*,

    829 F. App'x 448 (11th Cir. 2020) ...................................................................8

*Wynn v. Davison Design & Dev., Inc.*,

    2009 U.S. Dist. LEXIS 113898,

    2009 WL 4610924, at *3

    (N.D. Fla. Dec. 1, 2009) ...............................................................................5

*Young v. Roy's Rest.*,

    2006 U.S. Dist. LEXIS 64614, *8 (M.D. Fla. 2006).........................................5

*Zapata v. Royal Caribbean Cruises, Ltd.*,

    2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013).........................................2

**Statutes**

Fla. Stat. § 48.193 .......................................................................................3

Fla. Stat. § 48.193(1)(a)(2) .....................................................................3, 4, 5

Fla. Stat. § 48.193(1)(b).................................................................................3

**Other Authorities**

China's *Civil Procedure Law*........................................................................14

**Rules**

Fed. R. Civ. P. 4(f)(1) ....................................................................................7

Fed. R. Civ. P. 4(f)(3) .......................................................................7, 10, 12, 13

Fed. R. Civ. P. 60(b)(1) .................................................................................15

Fed. R. Civ. P. Rule 12(2) ...............................................................................7

Fed. R. Civ. P. Rule 12(b)(4).............................................................................8

**Treatises**

Article 10 of the Hague Convention .............................................................9, 14

Article 11 of the Hague Convention .........................................................9, 10, 11

Article 19 of the Hague Convention .........................................................9, 10, 11

Article 2 of the Hague Convention .....................................................................8

Article 3 of the Hague Convention ...................................................................10

Article 5 of the Hague Convention ..............................................................8, 9, 11

Hague Convention on Service Abroad,

Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163. ...............................................8, 9, 11, 12

Defendants localityi.com and mediumspots.com ("Defendants"), by and through their undersigned attorneys, respectfully submits this memorandum of law in support of Defendants' motion to set aside default pursuant to Federal Rules of Civil Procedure 60(b).

## **INTRODUCTION**

Defendants submit this motion to the Court seeking to vacate the default judgment that has been entered into this matter against them.

Defendants have multiple meritorious defenses, with the first and foremost being that this Court does not have jurisdiction over the Defendants. Defendants are not subject to personal jurisdiction in the State of Florida, as Defendants are not Florida companies, have no presence in Florida, and have never purposefully directed any activities or advertising towards Florida. The exercise of jurisdiction over Defendants violates Defendants' due process. In addition, Defendants were never properly served with process as Defendants, as Chinese entities, must necessarily be served in accordance with the Hague Conventions which did not take place. As this Court lacked jurisdiction over Defendants, the judgment as issued against them is void.

In addition to the issue of jurisdiction, the default judgment against Defendants should be vacated because it was the product of excusable neglect and Defendants have meritorious defenses. Defendants deny Plaintiffs' allegations against Defendants with respect to infringement, counterfeiting and willful infringement. Many of Plaintiffs' allegations are unsubstantiated, and Defendants deny them categorically.

For the reasons outlined below, especially in consideration of the strong preference for deciding cases on the merits, the default judgment should be vacated accordingly.

## ARGUMENTS

### I. THE JUDGMENT IS VOID AND MUST BE VACATED PURSUANT TO RULE 60(b)(4) AS DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION IN FLORIDA

A Defendant may move to set aside a default judgment on the ground that the court lacked personal jurisdiction. *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1215 (11th Cir. 2009). Plaintiff bears the burden of "establishing a prima facie case of personal jurisdiction over a nonresident defendant." *Zapata v. Royal Caribbean Cruises, Ltd.*, 2013 WL 1100028, at *2 (S.D. Fla. Mar. 15, 2013) (citation omitted).

"A federal court determines whether to exercise personal jurisdiction over a non-resident defendant by conducting a two-part inquiry." *Jackson v. Grupo Indus. Hotelero, S.A.*, 2008 U.S. Dist. LEXIS 88922, *13 (S.D. Fla. 2008). "First, the court should determine if there is a basis for asserting personal jurisdiction under the state's long-arm statute." *Id.* (*citing Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253 (11th Cir. 1996)). "If the court determines there is a basis, the court must then ascertain 'whether the exercise of personal jurisdiction over the defendant would violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which requires that the defendant have minimum contacts with the forum state and that the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice.'" *Jackson* 2008 U.S. Dist. LEXIS 88922, at *13–14 (*quoting Mut. Serv. Ins. Co. v. Frit Indus.*, 358 F.3d 1312, 1319 (11th Cir. 2004)).

### A. *Florida Long-Arm Statute*

Intellectual property infringement claims are tort claims.  *See Elite Aluminum Corp. v. Trout*, 451 F. Supp. 2d 1311, 1314 (S.D. Fla. 2006) (*quoting Response Reward Sys. v. Meijer, Inc.*, 189 F. Supp. 2d 1332, 1337 (M.D. Fla. 2002) ("Patent Infringement is a tortious act within the meaning of [Fla. Stat. § 48.193]"); *see Brunswick Records Corp. v. Lastrada Entm't Co., Ltd.*, 2022 U.S. Dist. LEXIS 214743, *8–9 (S.D. Fla. 2002) (finding that "[c]opyright infringement constitutes a tortious act under § 48.193"); *ADT LLC v. Alarm Prot. Tech. Fla.*, LLC, 2013 U.S. Dist. LEXIS 190106, *7 (S.D. Fla. 2013) (stating that "[t]rademark infringement is a tort," and therefore Fla. Stat. §48.193(1)(a)(2) is the applicable long-arm statute).  Accordingly, with respect to patent, trademark, and copyright infringement claims, the applicable Florida's long-arm statute is Fla. Stat. § 48.193(1)(a)(2)[1], which provides:

> A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:…<u>Committing a tortious act within this state</u>.

(emphasis added).

"Florida's long-arm statute must be strictly construed, and the burden of proving facts that allow for jurisdiction is on the plaintiff."  *Elite Aluminum Corp.* 451 F. Supp. 2d at 1314 .

"Florida courts have long recognized that a cause of action in tort accrues where the injury to the plaintiff first occurs." *Jackson*, 2008 U.S. Dist. LEXIS 88922, at *16 (*quoting Becker v. Hooshmand*, 841 So.2d 561, 562 (Fla. 4th DCA 2003)).  Accordingly, "[a] defendant commits a

---

[1]   "In 2013, the Florida legislature amended the statute and moved the tortious acts provision [from Fla. Stat. § 48.193(1)(b)] to its present location at Fla. Stat. § 48.193(1)(a)(2)." *Catalyst Pharms., Inc. v. Fullerton*, 748 Fed. Appx. 944, 948 n. 1 (11th Cir. 2018).  Accordingly, cases prior to 2013 that interpret Fla. Stat. §48.193(1)(b) are equally applicable.

tortious act under [Fla. Stat. §48.193(1)(a)(2)] as long as the act causes injury in Florida" regardless of where the defendant is physically located.  *Brunswick Records Corp.,* 2022 U.S. Dist. LEXIS 214743, at *8 (*citing Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1217 (11th Cir. 1999). With respect to infringement claims, "injury…occurs in the state where the [intellectual property] owner resides."  *See Jackson*, 2008 U.S. Dist. LEXIS 88922, at *17–18 (*citing Full Sail, Inc. v. Spevack*, 2003 U.S. Dist. LEXIS 20631 (M.D. Fla. Oct. 21, 2003)); *see Brunswick Records Corp.*, 2022 U.S. Dist. LEXIS 214743, at *9 (holding that "an injury occurs 'in Florida by virtue of the plaintiff's residence in Florida ***plus*** the accessibility of the website in Florida'" (*quoting Oviedo v. Ramirez*, 2022 U.S. Dist. LEXIS 93240, 2022 WL 1641865, at *7 (S.D. Fla. May 24, 2022) (emphasis in original)).

This makes perfect sense, as the State of Floria has an interest in protecting its residents but has no interests in allowing non-residents to utilize its long-arm statute to access Florida's judicial resources for the purpose of forum-shopping and judge-shopping.  *See Paris v. Levinson*, 2019 U.S. Dist. LEXIS 113436, *14 (M.D. Fla. 2019) (noting "Florida's interest in protecting its residents against tortious conduct"); *see ADT LLC*, 2013 U.S. Dist. LEXIS 190106, at *6–7 (S.D. Fla. 2013) (stating that "a Florida plaintiff, injured by the intentional misconduct of a nonresident expressly aimed at the Florida plaintiff, is not required to travel to the nonresident's state of residence to obtain a remedy").   As clearly explained by the Florida Supreme Court:

> Nothing in our law establishes a policy that Florida must be a courthouse for the world, nor that the taxpayers of the state must pay to resolve disputes utterly unconnected with this state's interests."
>
> * * * *
>
> The use of Florida courts to police activities even in the remotest parts of the globe is not a purpose for which our judiciary was created.   Florida courts exist to judge matters with significant impact upon Florida's interests, especially in light of the fact that the taxpayers of this state pay for the operation of its judiciary.   Nothing

in our Constitution compels the taxpayers to spend their money even for the rankest **forum shopping by out-of-state interests**.

*Kinney Sys. v. Cont'l Ins. Co.*, 674 So. 2d 86, 88, 93 (Fla. 1996) (emphasis added).

As such, Adidas, a German corporation with its North American Headquarters in Portland, is not allowed to invoke Florida's long-arm statute against non-Florida defendants. *See Jackson*, 2008 U.S. Dist. LEXIS 88922, at *17–18 (holding that "Plaintiff has failed to establish personal jurisdiction against…Defendants…under [Fla. Stat.§ 48.193(1)(a)(2)] of Florida's Long-Arm Statute," because "in all likelihood, Plaintiff is not a Florida resident"); *see Russell-Brown v. Jerry*, 270 F.R.D. 654, 661 (N.D. Fla. 2021) (finding that the plaintiff engaged in "impermissible forum-shopping" when the plaintiff sought voluntary dismissal of the action pending in N.D. Fla. and filed a new complaint in another district after the action was transferred to the N.D. Fla. by the District of New Jersey on venue ground); *see Young v. Roy's Rest.*, 2006 U.S. Dist. LEXIS 64614, *8 (M.D. Fla. 2006) (stating that forum-shopping "is a 'drain on the resources of the…judiciary,…and this type of tactical manipulation by plaintiffs should not be condoned").

### B.    Due Process

Because Florida's long-arm statute is not satisfied, there is no need to address the second part of the personal jurisdiction analysis. *See Prosegur Sec. USA v. Glob. Elite Grp., Inc.*, 2024 U.S. Dist. LEXIS 17400, *9 (S.D. Fla. 2024) (holding that "Florida's long-arm statute is not satisfied, and the Court need not address whether personal jurisdiction would comport with the Due Process Clause"); *see Wynn v. Davison Design & Dev., Inc.*, 2009 U.S. Dist. LEXIS 113898, 2009 WL 4610924, at *3 (N.D. Fla. Dec. 1, 2009) ("The due process analysis only becomes relevant if the court first determines there is a basis for personal jurisdiction under the state long-arm statute.").

Nevertheless, *were* the Court to examine the issue, for "specific personal jurisdiction cases," the Court must apply "the three-part due process test, which examines: (1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Louis Vuitton Malletier, S.A. v Mosseri*, 736 F3d 1339, 1355 (11th Cir 2013).   The plaintiff "bears the burden of establishing the first two prongs" and if so, then the defendant must make a "compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice."

Here, the third prong is decidedly against Plaintiff.   In considering the third prong, the Court must consider relevant factors "include the burden on the defendant of litigating in the forum, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello v Lovelady*, 544 F3d 1280, 1284 (11th Cir 2008).   All these factors weigh against the Plaintiff.

Defendants respectfully refer the Court to *Bell N. Rsch., LLC v HMD Am., Inc.*, 2023 US Dist. LEXIS 39359 (SD Fla Mar. 8, 2023).   In *Bell*, the plaintiff brought a case asserting thirteen separate claims for patent infringement against a large number of individual defendants, not dissimilar from this case.   Defendant Unisoc was a Chinese corporation with its principal place of business in Shanghai.   This Court held that "litigation in Florida would be burdensome for the Defendant—a Chinese corporation that has no connection to Florida."   *Id* at 20.   The same reasoning applies to the Defendants here. This Court also held that there was no "showing of the

6

impact any specific actions in Florida by Defendant Unisoc to raise Florida's interest beyond a generalized interest in enforcing federal law." *Id*.  Again, the same applies here.  Plaintiff has shown no injury outside of Oregon where Plaintiff is headquartered, or Germany where Plaintiff is based.  Thus, there is no impact on Florida beyond a "generalized interest in enforcing federal law."  These two factors alone were significant enough for this Court to determine that defendant met its burden of showing that personal jurisdiction offended "fair play and substantial justice."

Accordingly, Defendants respectfully submit that the action must be dismissed pursuant to Fed. R. Civ. P. Rule 12(2), as courts in the State of Florida lack personal jurisdiction over Defendants.

## II.    THE JUDGMENT IS VOID AND MUST BE VACATED PURSUANT TO RULE 60(b)(4) AS DEFENDANTS WERE NOT PROPERLY SERVED

"Generally, where service of process is insufficient, the court has no power to render judgment and the judgment is void." *Valdez v. Feltman* (*In re Worldwide Web Sys.*), 328 F.3d 1291, 1299 (11th Cir. 2003).

In short, because China is a signatory to the Hague Conventions, Defendants, as Chinese entities, must be served through the Chinese central authorities. China has not explicitly stated that it does not consent to service by email.

Fed. R. Civ. P. 4(f)(1) states in relevant part that an individual may be served outside of the United States: "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention."

Fed. R. Civ. P. 4(f)(3) states service may be effected "by other means not prohibited by international agreement, as the court orders."

"When service of process is challenged, [the plaintiff] must bear the burden of establishing its validity." *Winston v. Walsh*, 829 F. App'x 448, 450 (11th Cir. 2020) (quoting *Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc.*, 635 F.2d 434, 435 (5th Cir. 1981)).

Even though this Court previously granted Plaintiff's ex parte application to serve process by email, the Court did not have the benefit of a full briefing on this issue at that time. Defendants now intends to appear and contests the propriety of service by email on Defendants located in China as outlined herein, which if successful would result in the dismissal of this lawsuit for insufficient service pursuant to Fed. R. Civ. P. Rule 12(b)(4). *See Luxottica Group S.p.A. v P'ships & Unincorporated Ass'n Identified on Schedule "A"*, 391 F Supp 3d 816, 827-828 (ND Ill 2019) (granting the Defendants' motion to dismiss on the ground that service of process by email was prohibited by the Hague Convention, even though the court had previously granted the plaintiff's ex parte motion to serve the Defendants by email; reasoning that the order granting the plaintiff's ex parte motion "does not withstand scrutiny under full adversary briefing").

### A. The Hague Conventions Does Not Allow for Service by E-Mail Unless Explicitly Allowed by the Receiving Country

Article 2 of the Hague Convention provides:

Each Contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other Contracting States and to proceed in conformity with the provisions of Articles 3 to 6. Each State shall organise the Central Authority in conformity with its own law.

Article 5 of the Hague Convention provides:
The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either –
   a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or
   b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

Subject to sub-paragraph (b) of the first paragraph of this Article, the document may always be served by delivery to an addressee who accepts it voluntarily. If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed. That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document.

Article 10 of the Hague Convention provides:
Provided the State of destination does not object, the present Convention shall not interfere with –
a) the freedom to send judicial documents, by postal channels, directly to persons abroad[2],
b) the freedom of judicial officers, officials or other competent persons of the State of origin to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination,
c) the freedom of any person interested in a judicial proceeding to effect service of judicial documents directly through the judicial officers, officials or other competent persons of the State of destination.

Article 11 of the Hague Convention provides:
The present Convention shall not prevent two or more Contracting States from agreeing to permit, for the purpose of service of judicial documents, channels of transmission other than those provided for in the preceding Articles and, in particular, direct communication between their respective authorities.

Article 19 of the Hague Convention provides:

To the extent that the internal law of a Contracting State permits methods of transmission, other than those provided for in the preceding Articles, of documents coming from abroad, for service within its territory, the present Convention shall not affect such provisions.

*See* https://www.hcch.net/en/instruments/specialised-sections/service.

The plain texts of the Hague Convention make it very clear how the Hague Convention is structured. First, the authorized method of service of process is specified under Article 5 by

---

[2]China opted out of Section (a) of Article 10 by filing an objection. See https://www.usmaxrshals.gov/what-wedo/service-of-process/civil-process/hague-convention-service-abroad.

-

service through a "Central Authority" designated pursuant to Article 3 in each "Contracting State." *See Water Splash, Inc. v. Menon*, 581 U.S. 271, 275, 137 S. Ct. 1504, 1508 (2017) (finding that "[t]he primary innovation of the Hague Service Convention...is that it "requires each state to establish a central authority to receive requests for service of documents from other countries"); *see Smart Study Co. v. Acuteye-US*, 620 F. Supp. 3d 1382, 1392 (S.D.N.Y. 2022).

Second, each "Contracting State" is permitted to allow additional methods of service specified under Article 10 (service through postal channels and judicial officers), and Article 11 (other methods of service mutually agreed upon) upon other Contracting States. *See Water Splash, Inc.*, 581 U.S. 271, 275–76, 137 S. Ct. at 1508; *see Smart Study Co.*, 620 F. Supp. 3d at 1392 ; *see Facebook, Inc. v. 9 Xiu Network Shenzhen Tech. Co.,* 480 F. Supp. 3d 977, 980 (N.D. Cal. 2020). Article 19 also allows a "Contracting State" the option to unilaterally permit additional methods of service of process "coming from abroad," but no Article allows any "Contracting State" the option to unilaterally permit additional methods of service of process "going abroad." *See Facebook, Inc,* 480 F. Supp. 3d at 980 .

As previously cited, Fed. R. Civ. P. 4(f)(3) only allows alternative service "by other means" if such service is "not prohibited by international agreement." And service by email is prohibited *unless* a country explicitly permits it pursuant to Article 11 or Article 19. "Rule 4 [cannot] authorize service of process in"..."a manner inconsistent with a federal treaty." *Harris v. Browning-Ferris Industries Chemical Services, Inc.,* 100 F.R.D. 775, 777–78 (M.D. La. 1984) (explaining that "[b]ecause the Hague Convention is specific as to how service is to be made in a foreign country and the Federal Rules are general and designed to cover all circumstances, the Court finds that the provisions of the Hague Convention must control the manner of service" in an

action where the Hague Convention applies); see *Smart Study Co.*, 620 F. Supp. 3d at 1394 ( "Articles 11 and 19 provide ready tools to permit countries to expressly permit service by email. And those articles would be largely superfluous if litigants could serve a party in another country merely by selecting a method that is not expressly listed in the Hague Convention—there would be no need for articles that permit countries to agree to other methods of service, or to legislate to affirmatively authorize other methods of services.").

As China has not opted-in to permit service by email, service by email is "prohibited by international agreement." *See Facebook, Inc.*, 480 F. Supp. 3d at 982 ; *see also Night Owl SP, LLC v. Dongguan Auhua Elecs. Co.,* 2019 U.S. Dist. LEXIS 178264, *4 (M.D. Fla. 2019) (observing the mandatory nature of the Convention recognized by the Supreme Court in *Volkswagenwerk AG. v Schlunk,* 486 US 694 (1988) prohibits service by e-mail on Chinese entities).

The Hague Convention is simply not drafted in a way to allow all possible methods of service by default, and then "prohibit" specific types of methods of service. To the contrary, the organization of the Hague Convention is to designate specific methods of service that all "Contracting States" agreed to (Article 5), and then designate additional methods of service that the Contracting States may opt in and opt out (Articles 8 to 11). *See Facebook, Inc.*, 480 F. Supp. 3d at 983 (explaining that "the Convention's structure...enumerates particular methods for serving documents abroad" and the Convention's text "states that the Convention 'shall apply in all cases...where there is occasion to transmit a...document for service abroad," and therefore "[t]he Convention...doesn't simply offer...options that plaintiffs can resort to or not at their discretion...[r]ather, the Convention- delineated methods of service...are exclusive") (emphasis added).

Therefore, by definition the Hague Convention prohibits all other methods of services not referenced. *See Water Splash, Inc.,* 581 U.S.at 273, 137 S. Ct. at 1507 (holding that "the Hague Service Convention specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies"); *see Kyjen Co., LLC v. Individuals*, 2023 U.S. Dist. LEXIS 16408, *6 (S.D.N.Y. 2023) (stating that "[o]mission of a particular method of service from the Convention cannot be read to implicitly authorize that method"); *see Smart Study Co.*, 620 F. Supp. 3d at 1393 ("As numerous courts have recognized, binding Supreme Court precedent indicates that the Hague Convention outlines specific methods of service, and that methods of service that are not specifically authorized are impermissible under the Convention") (emphasis added); *see Luxottica Group S.p.A.*, 391 F. Supp. 3d at 825 (*citing Volkswagenwerk*, 486 U.S. at 699, 108 S. Ct. at 2107–08 ("The Supreme Court has stated that the drafters of the Hague Service Convention intended to prohibit a method of service not mentioned in its text") (emphasis added); *see Night Owl SP, LLC*, 2019 U.S. Dist. LEXIS 178264,at *3 (concluding that "the Hague Convention's silence on a method of service does not make it permissible"); *see also Anova Applied Elecs., Inc. v. Hong King Grp.*, Ltd., 334 F.R.D. 465, 472 (D. Mass. 2020) (reasoning that "[t]o permit service by e- mail would bypass the means of service set forth in the Convention"); *see also Facebook, Inc.*, 480 F. Supp. 3d at 983 (concluding that "[u]sing a method of service that is not enumerated in the Convention would be tantamount to not applying the Convention, which is expressly prohibited") (internal quotation marks omitted).

Consequently, there are many well-reasoned precedents holding that service of process by email is prohibited under the Hague Convention, and therefore not a sufficient service under Fed. R. Civ. P. Rule 4(f)(3) . *see e.g.*, *Luxottica Group S.p.A.*, 391 F. Supp. 3d at 827 (concluding

that "[b]ecause email would bypass the methods of service the Hague Convention authorizes, the Convention preempts it as inconsistent"); *See e.g.*, *Thus, Kyjen Co., LLC,* 2023 U.S. Dist. LEXIS 16408, at *6–7 (holding that "service via email and online publication is prohibited by [the Hague Convention] and is impermissible under Rule 4(f)(3)"); *see e.g.*, *Schluter Sys., L.P. v. Sanven Corp.*, 2023 U.S. Dist. LEXIS 3069, *19 (N.D.N.Y. 2023) (holding that "[a]s this Court has determined that the Hague Convention does not permit service by email on Chinese Foreign Nationals, email service is barred by Rule4(f)(4) because it is 'prohibited by international agreement'"); *see e.g.*, *Safavieh Intl, LLC v. Chengdu Junsen Fengrui Tech. Co.,* 2023 U.S. Dist. LEXIS 102843, *11 (S.D.N.Y. 2023) (concluding that "Smart Study offers the correct interpretation of the Hague Convention in light of recent Supreme Court precedent," i.e., that service of process by email is prohibited under the Hague Convention); *see e.g.*, *Smart Study Co.*, 620 F. Supp. 3d at 1392 (holding that "service by email on Defendantss located in China is not permitted under the Hague Convention"); *see e.g.*, *Facebook, Inc.*, 480 F. Supp. 3d at 987   (holding that "service by email on the China-based Defendantss...cannot be authorized under Rule 4(f)(3)"); *see e.g.*, *Sales v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 417 (N.D. Tex. 2020) (holding that email service is "proscribed by the [Hague] Convention because it is inconsistent with the Convention's authorized service methods"); *see e.g.*, *Night Owl SP, LLC*, 2019 U.S. Dist. LEXIS 178264, at *4   (holding that "although [the plaintiff] has shown that emails to be identified email addresses are likely to provide actual notice, they are improper methods of service" under the Hague Convention and therefore impermissible under Fed. R. Civ. P. Rule 4(f)(3)); *see e.g.*, *CRS Recovery, Inc. v. Laxton*, 2008 U.S. Dist. LEXIS 137363, 2008 WL 11383537, at *2 (N.D. Cal. Jan. 8, 2008) (concluding that "[a]n order allowing email service on a Defendants located in

China would contravene the treaty, and is not permitted under Rule 4(f)(3)").

**B. China's Objection to Service via "Postal Channels" Is an Objection to Service via E-Mail**

In addition, China as a signatory to the Hague Conventions has specifically objected to service via "postal channels" pursuant to Article 10 of the Hague Conventions.

Multiple Courts have held that China, which objects to service via "postal channels" has therefore objected to service via email. *See e.g. Prem Sales, LLC v. Guangdong Chigo Heating & Ventilation Equip. Co.*, 494 F. Supp. 3d 404, 407 (N.D. Tex. 2020); *Luxottica Grp. S.p.A. v.*, 391 F. Supp. 3d at 827 ; *Habas Sinai Ve Tibbi Gazlar Istihsal A.S. v. Int'l Tech. & Knowledge Co.*, Civil Action No. 19-608, 2019 U.S. Dist. LEXIS 219724, at *8 (W.D. Pa. Dec. 23, 2019); *Agha v. Jacobs*, No. C 07-1800 RS, 2008 U.S. Dist. LEXIS 109326, at *4 (N.D. Cal. May 13, 2008).

The reasoning of these Courts is that "postal channels" is the closest analog equivalent to service by emails, and there is no other provision of the Hague Conventions which comes closer.

Attached as Exhibit A is official guidance as issued by the Ministry of Justice of the People's Republic of China addressing the legality of service of documents in China through electronic mail. In the guidance, Chinese authorities state that "[a]ccording to China's *Civil Procedure Law*, a foreign judicial body or individual cannot directly serve documents to a person within China. Such requests should be submitted through the channels specified by treaties or through diplomatic channels, to the Ministry of Justice or the Ministry of Foreign Affairs, for the People's Court of China to serve on their behalf. When China joined the Hague Service Convention, it reserved the right under Article 10, which prohibits serving documents by mail

within its territory." Chinese authorities have therefore explicitly stated that by objecting to service via "postal channels," Chinese authorities also object to specifically service via electronic mail.

### III.   THE JUDGMENT SHOULD BE VOIDED PURSUANT TO RULE 60(B)(1)

Lastly, pursuant to Fed. R. Civ. P. 60(b)(1), a court may relieve a party from a final judgment due to "mistake, inadvertence, surprise, or excusable neglect." In order to have a default judgment set aside for excusable neglect, the defendant must "establish that (1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *Architectural Ingenieria Siglo XXI, Ltd. Liab. Co. v. Dominican Republic*, 788 F.3d 1329, 1343 (11th Cir. 2015).

There is a "strong preference for deciding cases on the merits—not based on a single missed deadline—whenever reasonably possible." *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1332 (11th Cir. 2014); *see also Olufemi v. Exclusive Ass'n Mgmt.*, No. 23-10752, 2024 U.S. App. LEXIS 3985, at *5 (11th Cir. Feb. 21, 2024); *Strauss, P.A. v. Gemini Ins. Co.*, No. 24-60191-CV-MIDDLEBROOKS, 2024 U.S. Dist. LEXIS 122984, at *5 (S.D. Fla. July 12, 2024); *Oppedisano v. Skroder*, No. 22-61802-MC-ALTMAN/HUNT, 2022 U.S. Dist. LEXIS 238440, at *6 (S.D. Fla. Nov. 23, 2022); *Cotromano v. United Tech. Corp.*, No. 13-80928-CIV-MARRA, 2020 U.S. Dist. LEXIS 108317, at *6 (S.D. Fla. Apr. 7, 2020).

Here, Defendants have multiple meritorious defenses.

First, as mentioned *supra* is the lack of personal jurisdiction.

Second, Defendants deny the unsubstantiated allegations in the Complaint about their

selling of inferior products. Plaintiffs allege that Defendants were "promoting, advertising, distributing, offering for sale and/or selling goods in interstate commerce using counterfeits and confusingly similar imitations of one or more of the adidas Marks," and that the goods sold by Defendants were "of a quality substantially different than that of Plaintiffs' genuine goods. However, these allegations in the Complaint are unsubstantiated. Plaintiffs do not in fact allege that they have inspected any of the goods sold by Defendants. And Defendants deny them categorically. *See* Declaration of Long Zhang; Declaration of Xingyuan Jiang.

Third, Defendants deny the allegations infringement entirely. Defendants deny ever having advertised selling any "Adidas" products, deny selling Adidas footwear. *See* Declaration of Long Zhang; Declaration of Xingyuan Jiang.

Fourth, Defendants deny the allegations of *willful* infringement. If any of the products Defendants sold bore marks similar to what's used by Adidas, Defendants deny knowing that this was the case until this lawsuit was commenced. Plaintiff does not allege that they ever served any cease and desist notices upon Defendants and Defendants deny ever having received any. *See* Declaration of Long Zhang; Declaration of Xingyuan Jiang.

With respect to the issue of prejudice, the clerk's entry of default took place May 16, 2024. (Dckt. 29). There is no prejudice as Plaintiffs' interests were and are protected by this Court's prior issuance of temporary and preliminary injunctive relief. (Dckt. 22). There has been no spoliation of evidence, Defendants have maintained and continue to maintain records as to the sales of the allegedly infringing products and have furnished them to both Plaintiff and to the Court. *See* Declaration of Long Zhang; Declaration of Xingyuan Jiang.

With respect to good cause, the primary reason for the delay is that the parties have been

engaged in ongoing settlement negotiations. Plaintiffs have several times advised Defendants that if Defendants filed a Rule 60(b) motion, Plaintiffs would cease attempting to settle the case. (Declaration of Anthony Son). Therefore, there was an implicit agreement between the parties that litigation would proceed if settlement negotiations broke down. *Idearc Inc. v. Kravitz Law Grp., P.A.,* No. 8:09-CV-02078-T-17AEP, 2010 U.S. Dist. LEXIS 54469, at *6 (M.D. Fla. May 7, 2010) (Holding that good cause existed because the parties were "actively engaged in settlement negotiations for several months" and that there was an "implicit agreement between the parties that the litigation would proceed if settlement negotiations broke down."); *Lawson v. Sutton*, No. 8:16-cv-403-T-17TBM, 2017 U.S. Dist. LEXIS 789, at *3 (M.D. Fla. Jan. 4, 2017) (Granting defendants' motion to set aside default in light of "ongoing good faith efforts at settlement, during an early stage" of the proceedings.); *Alford v. Spillway Spas, LLC*, No. 6:20-cv-823-Orl-40GJK, 2020 U.S. Dist. LEXIS 256057, at *5 (M.D. Fla. Aug. 31, 2020); *Last Goodbye, LLC v. Polychrome Pictures, LLC*, No. 1:07-cv-2879-TCB, 2009 U.S. Dist. LEXIS 140026, at *11 (N.D. Ga. Sep. 25, 2009).

On Friday, November 1, 2024, settlement discussions between the parties broke down and the parties are now presently at an impasse. In light of this impasse, and the breakdown of settlement discussions, Defendants now move to vacate the default entered and are prepared to proceed with litigation.

## <u>CONCLUSION</u>

Wherefore Defendants respectfully request that the court vacate the default judgment against Defendants and grant other relief the Court deems just and proper.

*[Signature page follows.]*

17

18

Dated: November 13, 2024

Respectfully Submitted,

By: /s/ Jacob Chen
      Jacob Chen, Esq.
      Anthony Son, Esq.
      DGW KRAMER LLP
      45 Rockefeller Plaza, 20th Floor
      New York, NY 10111
      Tel: (917) 983-2806
      Fax: (917) 633-6183
      Email: jchen@dgwllp.com

      /s/Darren Heitner
      HEITNER LEGAL, P.L.L.C.
      215 Hendricks Isle
      Fort Lauderdale, FL 33301
      darren@heitnerlegal.com
      Ph.      (954) 558-6999


      *Attorneys for Defendants*
      *localityi.com and mediumspots.com*

## L.R. 7.1(a)(3) Certification

Counsel for Defendants conferred with all parties who may be affected by the relief sought hereunder (*i.e.*, Plaintiff), and Plaintiff has indicated that it opposes the relief requested herein