UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-62185-CIV-SMITH

ADIDAS AG, *et al*.,

    Plaintiffs,

vs.

THE INDIVIDUALS, BUSINESS ENTITIES,
AND UNINCORPORATED ASSOCIATIONS
IDENTIFIED ON SCHEDULE "A,"

    Defendants.
_____/

**ORDER DENYING MOTION TO SET ASIDE DEFAULT**

This matter is before the Court on Defendants'localityi.com and mediumspots.com ("Defendants") Motion to Set Aside Default Judgment [DE 40] ("Defendants' Motion to Vacate"), Plaintiffs' Memorandum in Opposition to Defendant's Motion to Set Aside Default Judgment [DE 43] ("Plaintiffs' Response"), and Defendants' Reply [DE 44]. For the reasons stated herein, Defendants' Motion is denied.

**I.    Background**

On November 17, 2023, Plaintiffs filed their Complaint [DE 1] claiming trademark infringement, counterfeiting and other claims under the Lanham Act and common law. On November 27, 2023, Plaintiffs filed for a temporary restraining order ("TRO") (DE 8), which the Court granted on April 17, 2024 (DE 12), and subsequently converted into a preliminary injunction on April 30, 2024 (DE 22). Also on November 27, 2023, Plaintiffs filed their motion for alternative service pursuant to Federal Rule of Civil Procedure 4(f)(3) [DE 9]. The Court granted the motion on April 17, 2024, (the Court's "April 17 Order") and authorized Plaintiffs to serve the Summonses,

Complaint, and all pleadings, filings, and discovery in this matter via e-mail and by posting on Plaintiffs' designated serving notice website. (*See* DE 11.)

On April 29, 2024, Plaintiffs filed a certificate of service [DE 17], certifying their compliance with the Court's April 17 Order by serving all Defendants, via email and website posting, with all pleadings to date, including but not limited to the Complaint [DE 1], the TRO [DE 8], the Court's Order granting the TRO [DE 12], the Court's Order Granting Alternative Service [DE 11], Notice of Expiration [DE 10], and Plaintiffs' Filing of Bond [DE 13]. Defendants' response deadline was set for May 14, 2024; however, Defendants failed to comply. Accordingly, Plaintiff's moved for entry of Clerk's Default on May 15, 2025 [DE 28], which was granted on May 16, 2025 [DE 29].

On May 24, 2024, Plaintiffs filed their Motion for Entry of Final Default Judgment Against Defendants and Memorandum of Law in Support Thereof ("Motion for Final Default Judgment") [DE 31]. The Court granted the Motion for Final Default Judgment on June 24, 2024 [DE 36]. Nearly five months later, on November 13, 2024, Defendants filed the instant Motion to Vacate [DE 40]. Defendants argue that this Court does not have jurisdiction over them and that they can establish excusable neglect to justify setting aside the default judgment against them. (*See id*.)

II.     **Legal Standard**

    A.     **Personal Jurisdiction**

"A plaintiff seeking to establish personal jurisdiction over a nonresident defendant 'bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction.'" *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013) (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)). Complaints must include "properly pleaded facts pertinent to the conduct and activities of the defendant in the forum

state[.]" *Borislow v. Canaccord Genuity Grp. Inc.*, No. 14-cv-80134, 2014 WL 12580259, at *4 (S.D. Fla. June 27, 2014) (citing *Elmex Corp. v. Atl. Fed. Sav. & Loan Ass'n of Ft. Lauderdale*, 325 So. 2d 58, 61 (Fla. 4th DCA 1976)) (internal quotation marks omitted). When a defendant submits evidence in support of its challenge to personal jurisdiction, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *United Techs. Corp.*, 556 F.3d at 1274 (quoting *Meier ex rel. Meier v. Sun Intern. Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)) (internal quotation marks omitted). "Where the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff," *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010) (citation omitted), and must "accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

A federal court undertakes a two-step inquiry in determining whether specific personal jurisdiction over a nonresident defendant exists. *Louis Vuitton Malletier*, 736 F.3d at 1350. First, it must determine whether the exercise of jurisdiction is appropriate under Florida's long-arm statute. *Id*. If jurisdiction under Florida's long-arm statute is proper, the court must then consider whether the exercise of jurisdiction would comply with the Due Process mandate of the Fourteenth Amendment. *Id*.

### B. Service of Process

Federal Rule of Civil Procedure 4(f) provides that "[u]nless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States . . . by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(3). A

party seeking authorization for alternate service under Rule 4(f)(3) need not attempt service by those methods enumerated under subsections (f)(1) and (f)(2), including by diplomatic channels and letters rogatory, before petitioning the Court for 4(f)(3) relief. *Brookshire Bros., Ltd. v. Chiquita Brands Int'l*, Case No. 05-CIV-21962, 2007 WL 1577771, at * 1 (S.D. Fla. 2007) (citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002)). The decision to accept or deny service by alternate means pursuant to Rule 4(f)(3) falls soundly within the discretion of the district court. *Chiquita Brands Int'l*, 2007 WL 1577771, at * 2.

### C.     Motion to Vacate

Federal Rule of Civil Procedure 60(b)(1) affords district courts the discretion to relieve a party from a final judgement or order upon a showing of "mistake, inadvertence, surprise, or excusable neglect." "Whether a party's non-compliance with a deadline constitutes 'excusable neglect' is an equitable decision turning on 'all relevant circumstances surrounding the party's omission.'" *Chege v. Georgia Dep't of Juv. Just.*, 787 F. App'x 595, 598 (11th Cir. 2019) (quoting *Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 398 (1993)). Courts should consider the following factors in their deliberations: "the danger of prejudice to the [opposing party], the length of the delay and its potential impact on the judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Pioneer*, 507 U.S. at 398.

The purpose of Rule 60(b) is "to strike a delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the 'incessant command of the court's conscience that justice be done in light of all the facts.'" *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 401 (5th Cir. 1981).[1] Importantly, "[a] motion under Rule 60(b) must be made within a

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) ("We hold that the decisions of

reasonable time—and for reasons (1), (2), and (3) *no more than a year* after the entry of judgment or order or the date of the proceeding." Fed. R. Civ. P 60(c)(1) (emphasis added).

### III. Discussion

#### A. The Court has Jurisdiction over Plaintiffs' Claims

##### 1.) Florida Long Arm Statute

Plaintiffs claim that the Court has personal jurisdiction over Defendants under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(2), and that Due Process principles weigh in favor of exerting personal jurisdiction over them. Florida's long-arm statute, Fla. Stat. § 48.193, provides, in pertinent part:

> (1)(a) A person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself . . . to the jurisdiction of the courts of this state for any cause of action arising from any of the following acts:
> . . .
> 2. Committing a tortious act in this state . . . .

Fla. Stat. § 48.193(1)(a)(2) (emphasis added).

"Under the committing a tortious act prong, a court may assert jurisdiction over a nonresident defendant who commits a tort outside of the state that causes injury inside the state, meaning the defendant's physical presence is not required if the tort causes an injury in Florida." *Sutherland v. SATO Glob. Sols., Inc.*, No. 17-cv-61596, 2018 WL 3109627, at *5 (S.D. Fla. Apr. 10, 2018) (alteration adopted; quotation marks and citation omitted). "It is well settled in the Eleventh Circuit that trademark claims under the Lanham Act allege tortious acts for long-arm purposes[.]" *PG Creative Inc. v. Affirm Agency*, LLC, No. 18-cv-24299, 2019 WL 5684219, at *4

---

the United States Court of Appeals for the Fifth Circuit . . . as that court existed on September 30, 1981, handed down by that court prior to the close of business on that date, shall be binding as precedent in the Eleventh Circuit[.]").

(S.D. Fla. Oct. 31, 2019) (alteration added; citation omitted); *see also Hard Candy, LLC v. Hard Candy Fitness, LLC*, 106 F. Supp. 3d 1231, 1239 (S.D. Fla. 2015) (recognizing trademark infringement under 15 U.S.C. section 1114, false designation of origin under 15 U.S.C. section 1125(a), trademark dilution under 15 U.S.C. § 1125(c), and common law unfair competition involve "tortious acts" under the long-arm statute (quotation marks omitted; collecting cases)).

In their Complaint, Plaintiffs allege that (1) Defendants advertised their counterfeit goods to the consuming public, offered the counterfeit goods for sale, and sold the counterfeit goods using copies of one or more of Plaintiffs' marks throughout the United States; (2) Defendants used the infringing trademarks on ecommerce websites on the internet, which are accessible in Florida; and (3) "Defendants have purposefully directed some portion of their unlawful activities towards consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' goods into the State." (DE 1 at ¶¶ 10, 13, 50.)

Defendants argue that these allegations are insufficient for Plaintiffs to meet their burden of establishing specific jurisdiction under Florida's long-arm statute. Defendants further contend that "Adidas, a German corporation with its North American Headquarters in Portland, is not allowed to invoke Florida's long-arm statute against non-Florida defendants." (DE 40 at 5.) The Court disagrees.

The Eleventh Circuit has provided thorough guidance on the reach of section 48.193(1)(a)(2) in suits involving trademark infringement, nonresident defendants, and publicly accessible websites. In *Licciardello v. Lovelady*, 544 F.3d 1280 (11th Cir. 2008), the plaintiff alleged trademark infringement claims against the defendant for allegedly using the plaintiff's trademarked name and photograph without authorization on a website "accessible to the public in

Florida" creating the impression that the plaintiff endorsed defendant. *Id*. at 1282. The defendant resided in Tennessee and created the website in Tennessee. *See id*. at 1282–83. The Eleventh Circuit determined that the plaintiff's allegations satisfied section 48.193(1)(a)(2)'s requirements for specific jurisdiction. *See id.* at 1283– 84. The court stated: "We need not decide whether trademark injury necessarily occurs where the owner of the mark resides, as the Florida district courts have held, because in this case the alleged infringement clearly also occurred in Florida by virtue of the website's accessibility in Florida." *Id*. at 1283 (footnote call number omitted). Put another way, "under the 'tortious acts' provision in [section] 48.193(1)(a)(2), a trademark infringement on an internet website causes injury and occurs in Florida 'by virtue of the website's accessibility in Florida.'" *Mosseri*, 736 F.3d at 1354. (alteration added; quoting *Lovelady,* 544 F.3d at 1283)).

Pursuant to the Eleventh Circuit's guidance, the Court concludes that Plaintiffs have met their burden of establishing the requirements of Florida's long arm statute. Plaintiff's allegations of Defendant's trademark infringement via a Florida-accessible website and sales of counterfeit versions of Plaintiffs' goods to Florida customers satisfy section 48.193(1)(a)(2)'s requirements for specific personal jurisdiction. (*See* DE 1 at ¶¶ 2, 7, 11–40). This conclusion is consistent with the Eleventh Circuit's analysis in *Lovelady* and *Mosseri*. *See also Dohler S.A. v. Guru*, No. 16-23137-Civ, 2017 WL 4621098, at *5 (S.D. Fla. Oct. 16, 2017) (finding the plaintiffs satisfied the long-arm statute where they alleged the defendants sold counterfeit products by virtue of a website accessible in Florida); *Kumbrink v. Hygenic Corp*., No. 15-Civ-23530, 2016 WL 5369334, at *2 (S.D. Fla. Sept. 26, 2016) ("[The defendant's] website was not only accessible in Florida, but Florida residents were able to purchase the alleged infringing product on it. Therefore, [the defendant's] alleged tort caused injury inside Florida, and this Court has long-arm jurisdiction pursuant to Fl[orida] Stat[ute] [section] 48.193(1)(a)(2)." (alterations added; citation omitted));

*Evans v. Andy & Evan Indus., Inc.*, No. 15-cv-61013, 2016 WL 8787062, at *3 (S.D. Fla. July 15, 2016) (agreeing with the plaintiffs that accessibility in Florida of the defendant's website featuring infringing products constituted a tortious act causing injury in Florida); *Cross Match Techs., Inc. v. Crossresolve, LLC*, No. 15- 81310-Civ, 2016 WL 3216541, at *4 (S.D. Fla. June 10, 2016) ("Because [the plaintiff] establishes that [the defendant] maintains a website accessible in Florida that displays the allegedly infringing mark, [the plaintiff] makes out a prima facie case of personal jurisdiction under the long-arm statute." (alterations added; citations omitted)).

### 2.)  Due Process

Plaintiffs must also show the exercise of jurisdiction over the Defendants would not offend due process. *See Madara*, 916 F.2d at 1514 (citations omitted). To comport with due process, the nonresident defendant must be shown to have established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Oldfield v. Pueblo De Bahia Lora, S.A.*, 558 F.3d 1210, 1220 (11th Cir. 2009) (quotation marks and citations omitted). In specific jurisdiction cases, the due process inquiry is whether:

> (1) "the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum"; (2) "the nonresident defendant 'purposefully availed' [it]self of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws"; and (3) "the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'"

*Mosseri*, 736 F.3d at 1355 (alteration added; citations omitted)). "The plaintiff bears the burden of establishing the first two prongs, and if the plaintiff does so, a defendant must make a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id*. (quotations marks and citation omitted).

Where a Defendant has a "constitutionally sufficient contact with Florida," the Court must

8

determine whether the exercise of jurisdiction over Defendant "comports with fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316, (1945). "Relevant factors include the burden on the defendant, the forum's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief and the judicial system's interest in resolving the dispute." *Licciardello,* 544 F.3d at 1288 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

Here, as Plaintiffs point out "Defendants do not even mention—much less challenge—the first two prongs of the due process test. As such, Defendants have admitted that [Plaintiffs'] claims arise out of Defendants' contacts with Florida and that Defendants have purposefully availed themselves of the privilege of conducting activities within this state."[2] (DE 43. at 12.) However, Defendants argue that the third prong is "is decidedly against Plaintiff[s]" in part because Plaintiffs "ha[ve] shown no injury." (DE 40. at 6.)

For support, Defendants rely solely on *Bell N. Rsch., LLC v. HMD Am., Inc*., No. 22-22706-CIV, 2023 WL 2428121 (S.D. Fla. Mar. 9, 2023). In *Bell*, the Court determined that litigation in Florida would be burdensome for the defendant, a Chinese corporation. *Id*. at 7. The court based this decision on its finding that the defendant had no connection to Florida. *Id*. Furthermore, the court explained that Florida's interest in the dispute was minimal as it related to that particular defendant. *Id*.

In the instant case, Defendants argue that this Court should apply the same reasoning from *Bell*, because litigation in Florida would be burdensome and Plaintiffs have "shown no injury

---

[2] Notwithstanding Defendants' concession, the Court finds that Plaintiffs' allegations are enough to satisfy the first two prongs. *See Weingartner v. Draper James, LLC*, No. 15-81581-Civ, 2016 WL 8678544, at *5 (S.D. Fla. Oct. 4, 2016) (finding the first requirement was "easily satisfied" where the record demonstrated that the defendant's contacts with Florida involved selling and distributing infringing goods in Florida); *Carmel & Co. v. Silverfish, LLC*, No. 1:12-CV-21328-KMM, 2013 WL 1177857, at *7 (S.D. Fla. Mar. 21, 2013) ("Sales of goods in Florida through websites have been found to be purposeful availment.")

outside of Oregon where Plaintiff is headquartered, or Germany where Plaintiff is based. Thus, there is no impact on Florida beyond a 'generalized interest in enforcing federal law.'" (DE 40 at 7.) The Court, however, finds Defendants' reliance on *Bell* and their arguments in support unpersuasive.

First, beyond their conclusory statement that they would be burdened by litigating this case in Florida, Defendants have "not articulated the burden placed on it in adjudicating the action in this district, let alone any other district in the United States." *CreeLED, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, 699 F. Supp. 3d 1357, 1363 (S.D. Fla. 2023). Moreover, "to the extent there is any burden on Defendant beyond that of litigating any matter in a U.S. District Court, that alone is insufficient to offend traditional notions of fair play and substantial justice." *Id*.

Second, the Court's April 30 Order granting Plaintiffs' preliminary injunction established that Plaintiffs met their burden to show they are suffering irreparable harm and damage by Defendants' use of their trademarks. *See Spectrum Image, Inc. v. Makozy*, No. 19-21702-Civ, 2019 WL 3997164, at *3 (S.D. Fla. Aug. 23, 2019) ("Plaintiff has a strong interest in obtaining convenient and effective relief in order to protect its company's reputation, resolve any consumer confusion, and maintain the value of its trademark[s].") With this in mind, the Court's April 17 Order supports a finding that Plaintiffs have an interest in obtaining relief. By the same token, the Court's April 17 Order establishes that the judicial system has an interest in resolving this dispute. *See CreeLED, Inc.*, 699 F. Supp. 3d at 1363.

Finally, this is not "one of those rare cases in which minimum requirements inherent in the concept of fair play and substantial justice defeat the reasonableness of jurisdiction." *U.S. S.E.C. v. Carrillo*, 115 F.3d 1540, 1547 (11th Cir. 1997) (alterations adopted; quotation marks and citation

omitted). To be sure, "the state of Florida has a strong interest in stopping infringing products from being sold to its consumers." *Royal Enamel Ltd. v. JD E-Com. Am. Ltd.*, No. 22-CV-23990-DPG, 2024 WL 5074976, at *10 (S.D. Fla. Dec. 11, 2024); *Louis Vuitton Malletier*, 736 F.3d at 1358 ("Florida ha[s] a strong interest in hearing the case and protecting consumers from confusion that results from trademark infringement."). Accordingly, the Court finds that exercising personal jurisdiction over the Defendants comports with traditional notions of fair play and substantial justice.

### B. Service was Proper

Federal Rule of Civil Procedure 4(f) outlines how to serve a summons when the defendant resides in a foreign country. In relevant part, Rule 4(f) states: "[A]n individual . . . may be served at a place not within any judicial district of the United States: (1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention." *Winston v. Walsh*, 829 F. App'x 448, 450 (11th Cir. 2020), cert. denied, No. 20-1225, 2021 WL 1520834 (U.S. Apr. 19, 2021) (quoting Fed. R. Civ. P. 4(f)(1)). Pursuant to Federal Rule of Civil Procedure 4(f)(3), "service may be effected 'by other means not prohibited by international agreement as may be directed by the court.'" *Prewitt Enterprises, Inc. v. Org. of Petroleum Exp. Countries*, 353 F.3d 916, 926 (11th Cir. 2003) (quoting Fed. R. Civ. P. 4(f)(3)). Therefore, the Court must determine whether the method of service employed is an agreed means of service authorized by the Hague Service Convention or a method "not prohibited by international agreement." *Id*.

Ultimately, "[t]he decision to accept or deny service by alternate means pursuant to Rule 4(f)(3) falls soundly within the discretion of the district court." *Sec. & Exch. Comm'n v. Palm House Hotel, LLLP*, No. 18-CV-81038, 2018 WL 9849603, at *1–2 (S.D. Fla. Nov. 7, 2018) (citation omitted). However, "the Due Process Clause requires every method of service to provide notice

11

reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 707 (1988) "When service of process is challenged, [the plaintiff] must bear the burden of establishing its validity." *Winston*, 829 F. App'x at 450 (quoting *Aetna Bus. Credit, Inc. v. Universal Décor & Interior Design, Inc*., 635 F.2d 434, 435 (5th Cir. 1981)).

Here, Defendants make two arguments to explain why service was improper. First, Defendants contend that China has not "opted-in" to permit service via e-mail. Second, Defendants claim that China's Article 10 objection to service through "postal channels" prohibits service via e-mail. The Court finds both arguments unavailing.

In its April 17 Order Authorizing Alternate Service of Process upon the Defendants via e-mail and website posting under Federal Rule of Civil Procedure 4(f)(3), the Court found that a signatory nation's objection to the alternate methods of service provided by the Hague Convention "is expressly limited to those means [stated in the objected-to Article.]" (DE 11 at 2-3 (quoting *Karsten Mfg. Corp. v. Store*, No. 18-61624-CIV, 2018 WL 8060707, at *1 (S.D. Fla. July 26, 2018))). The Court specifically noted that China "[has not] expressly objected to service via e-mail or website posting." (DE 11 at n.1.) Therefore, the Court held that "[a] court acting under Rule 4(f)(3) . . . remains free to order alternative means of service where a signatory nation has not expressly objected to those means." *Id*. at 3 (quoting *Karsten Mfg. Corp.,* 2018 WL 8060707, at *1 (citation omitted)).

Moreover, while the Hague Convention does not expressly authorize service by e-mail, according to a majority of courts, "alternative means of service [such as e-mail that are] unmentioned by the Hague Convention are not prohibited if 'the receiving state has not objected to

12

[that alternative form of service].'" *Chanel, Inc. v. HandbagStore*, No. 20-CV-62121, 2021 WL 3060329, at *9 (S.D. Fla. June 30, 2021), report and recommendation adopted sub nom. *Chanel, Inc. v. Handbag Store*, No. 20-CIV-62121-RAR, 2021 WL 3053396 (S.D. Fla. July 20, 2021) (quoting *Hangzhou Chic Intelligent Tech. Co. v. P'hips & Unincorporated Assocs. Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021)).

Furthermore, according to the majority view, followed by this District, China's objection to the alternative means of service in Article 10 does not preclude service by e-mail or website posting. *See e.g., Chanel, Inc. v. designerchanelgirl.com*, No. 20-62447-CIV, 2020 WL 8226843, at *1 (S.D. Fla. Dec. 2, 2020) (stating that "[an] objection is expressly limited to those means [of service objected-to] and does not represent an objection to other forms of service, such as e-mail or publication" (quoting *Karsten Mfg. Corp.*, 2018 WL 8060707, at *1)). Indeed, "the majority of courts [hold] that a country's objection to postal service under the Hague Convention does not equate to an objection to email service" because "the instantaneous and traceable nature of email cures the concerns with postal service." *Hangzhou Chic Intelligent Tech. Co. v. Part'ships & Unincorporated Assocs. Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *3 (N.D. Ill. Apr. 1, 2021) (collecting cases)).

In accordance with the majority view, the Court finds that service was proper and sufficient in this case.

### C. Defendants have not Shown Excusable Neglect

Defendant moves to vacate the Default Judgment under the three-prong test of Rule 60(b)(1) by attempting to show that that: "(1) it had a meritorious defense that might have affected the outcome; (2) granting the motion would not result in prejudice to the non-defaulting party; and (3) a good reason existed for failing to reply to the complaint." *E.E.O.C. v. Mike Smith Pontiac GMC,*

*Inc.*, 896 F.2d 524, 528 (11th Cir. 1990).

Here, the Court does not reach Defendants' arguments concerning a meritorious defense or prejudice because Defendant fails to show good cause for their delay. *Commodity Futures Trading Comm'n v. Empires Consulting Corp.*, No. 22-21997-CIV, 2025 WL 1696234, at *3 (S.D. Fla. June 17, 2025); *see also Fla. Physician's Ins. Co. v. Ehlers*, 8 F.3d 780, 783–84 (11th Cir. 1993) (affirming denial of Rule 60(b)(1) motion based on lack of good cause). First, the Court notes that counsel for Defendants formally entered his appearance on the record on June 4, 2025. Notably, at the time of this appearance, Plaintiffs' Motion for Default Judgment remained pending before the Court. Defendants, however, failed to take any action until *five months* after the final judgment was entered.

The only reason Defendants offer for their delay is due to settlement negotiations between the parties. (*See* DE 40 at 16-17.) This is insufficient to establish good cause for the delay. *See In re Worldwide Web Sys., Inc.*, 328 F.3d at 1297–98 (affirming dismissal where defendant failed to demonstrate "good reason" under Rule 60(b)(1) for failing to move to set side judgment for nearly two months after learning of default judgment). To be sure, "[r]eliance on a belief that deadlines were extended based on settlement negotiations, without any written agreement or any actual ongoing negotiations, is not good reason for failure to timely respond." *Rivas v. Denovus Corp.*, No. 10-22070, 2010 WL 4102926, at *2 (S.D. Fla. Oct. 18, 2010); *see Am. Credit Acceptance, LLC v. Magic Auto Sales Corp.*, No. 18-25468-CIV-MORENO, 2019 WL 3940560, at *3 (S.D. Fla. Aug. 21, 2019) ("[Defendant]'s belief that his case was dormant or that a co-defendant resolved the matter is the kind of carelessness or negligence that prevents the Court from setting aside the default judgment pursuant to Rule 60(b)(1)."); *see also Davila v. Alcami Grp., Inc.*, No. 12-23168-CIV, 2013 WL 1934168, at *5 (S.D. Fla. May 9, 2013) ("Defendants' decision not to file a response

based on their belief that settlement negotiations would continue was not sufficient for purposes of Rule 60(b)(1).")." Against this backdrop, Defendants fail to demonstrate good cause to set aside the default judgment.

## IV. Conclusion

Given the foregoing, the Court concludes that it has jurisdiction over the Defendants, service on the Defendants was proper, and Defendants have failed to meet their burden to justify setting aside the default judgment against them. Accordingly, it is

**ORDERED** that Defendants' Memorandum in Support of Motion by Defendants to Set Aside Default Judgment ("Motion to Vacate") [DE 40] is **DENIED**.

**DONE and ORDERED** in Fort Lauderdale, Florida, this 30th day of June, 2025.

RODNEY SMITH
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record